## Edward H. Sanford, et al., v. Isaac Hoge, Jr., Executor, etc.

### Gen. No. 4,421.

1. VERDICT—*when not set aside on review.* The Appellate Court will not set aside a verdict on review as against the weight of the evidence merely because it was found against the testimony of the greater number of witnesses.

2. HYPOTHETICAL QUESTION—*must be predicated upon evidence in the case.* A hypothetical question is improper which is not predicated upon any evidence in the case.

3. EXPERT EVIDENCE—*when exclusion of, harmless error.* The exclusion of expert evidence as to the value of services is harmless error where there is, outside of such evidence, abundant proof in the record as to the value of the services in question.

Action of assumpsit. Appeal from the Circuit Court of Grundy County; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed March 8, 1905.

AMERICUS B. MELVILLE and CHARLES D. YOUNG, for appellants.

J. L. O'DONNELL, for appellee.

MR. JUSTICE VICKERS delivered the opinion of the court.

Isaac Hoge, Jr., as sole surviving executor of Isaac Hoge, deceased, brought this suit in the Circuit Court of Grundy County, against Edward E., W. G., and Frank Sanford to recover $220 rent on an eighty-acre tract of land for the term beginning April 16, 1900, and ending March 1, 1901.

There is no dispute about the rent being due, but the whole controversy is over certain counter claims interposed by defendant below. The finding of the jury was for the plaintiff below, and a motion for a new trial being overruled, defendants below bring the case here by appeal.

Appellants sought to set off against the rent three separate items as follows: First, appellants insist that they were entitled to credit for $150 in payment for services rendered appellee in procuring a tenant to lease a 2,600-acre tract of land in Iroquois county for the year 1900 at a cash rental of $1,200; second, appellants claim a credit of $374 for services rendered appellee in paying taxes for the year 1899 on 29,120 acres of land in North and South Dakota, being 187 tracts at $2 per tract; third, $35 is claimed by appellants as compensation for services rendered in searching for, finding and delivering about 225 abstracts of title to appellee.

Appellee denies liability for each of these claims, and the issue thus presented was submitted to the jury and resulted in a finding against appellants on each item. A reversal is asked in this court on the ground that the finding of the jury on these items of counter claims is contrary to the clear weight and preponderance of the evidence. In order to understand the bearing of the evidence, a brief statement of the relation of the parties will be necessary. Isaac Hoge died in Grundy County, owning a large landed estate; his lands were located in Illinois, North and South Dakota. By his last will Edward Sanford, Sr., Caroline Hoge and appellee, Isaac Hoge, Jr., were appointed executors. Caroline Hoge and Edward Sanford died, leaving appellee the sole surviving executor. Edward Sanford died March 18, 1900. Prior to his death he maintained an office on Washington street in the city of Morris, where he kept substantially all of the papers belonging to the estate of Isaac Hoge. At the time of his death Edward Sanford left four children surviving, the three sons, appellants herein, and a daughter, Ella R. Sanford. During the last few years of her father's life Ella had worked in his office and

Sanford v. Hoge.

had become familiar with the office'work and the details of his business as executor of the Hoge estate. After the death of Edward Sanford appellants opened up a real estate business in the office their father had occupied. In the spring of 1900 the taxes for the year 1899 were to be paid on the lands of the Hoge estate in North and South Dakota. There were 29,120 acres, located in several counties. Appellants contend that appellee as executor employed them to pay the taxes and promised to pay them for such service $2 per tract, for each of the 187 tracts; that they did pay them and procure receipts in the name of the executor and that they have not been paid therefor. Appellants all testify that there was such a contract with appellee and that the services were rendered by them as required thereby. Appellee denies making any contract whatever with appellants in relation to the payment of these taxes. His contention is that he employed or requested Ella Sanford to attend to the payment of taxes on the Dakota lands, and that she personally attended to this business. That the business of paying these taxes was transacted in the office formerly occupied by Edward Sanford, deceased, is admitted, and that appellants and their sister occupied the office during the time the business was done is not disputed. It is also shown that in the correspondence conducted with the various tax collectors in the Dakotas, the letters were written on the stationery of appellants and appellants' names were signed to the letters and the receipts were returned addressed to them. Miss Ella Sanford testifies that appellee requested her to look after the payment of these taxes; that she had assisted her father in his lifetime in this estate business and was entirely familiar with its details; that after appellee requested her to do this work she went to the office, prepared a list of the lands, sent them to the various county treasurers in the Dakotas where the lands were; that the amount of taxes were put on the list by the collectors and that the money was then furnished by appellee and that she sent it forward. She also testifies that her brothers had nothing to do with

it, and that they requested her to use their stationery and sign their names to advertise their real estate business. Other minor facts and circumstances were put in evidence, some tending to support one theory and some the other, but the case rests, so far as the question of paying the taxes on the Dakota lands is concerned, chiefly on the evidence of the appellants on the one side, and appellee, corroborated by the sister of appellants, on the other.

The claim for $150 for commission in finding a tenant for the 2,600-acre farm in Iroquois County is also the subject of a sharp conflict in the evidence. Appellants testify that they were employed by appellee to find a tenant for this land. They claim to have made an effort and as a result a Mr. Francour was found and brought to Morris and that appellee contracted with him for $1,200, for one year, and that the lease and note were drawn up by one of appellants and left in his possession. Appellants claim that they had an agent by the name of Lyman and that they had interested Lyman to help find a suitable tenant for this farm. On the other hand appellee testifies he never employed appellants to secure a tenant; that he wrote to Francour and that Francour came to Morris, and that appellee made the contract with him personally. Francour testifies about coming to Morris and taking a livery rig and driving ten miles in the country where Mr. Hoge resided to see him, and not finding him at home came back to Morris and finally found appellee at the office of appellants, called him out and agreed in a short time on the lease and it was then drawn up in appellants' office, by one of appellants, signed, and he went at once to catch his train home. Francour contradicts appellants in all the substantial matters relating to this leasing contract. The length of time Francour was in Morris, the fact that he did not go there to see appellants, made no inquiry for any one except Hoge, made a long drive to the country to see him, when appellants were there in the city, the fact that he swears he did not know and had never heard of the Sanfords until he met them after he had agreed on the lease, bear down with

great force on appellants' contentions that they were the agents who brought the tenant to Morris. So far as the item of $35 for finding abstracts of title is concerned, it stands substantially upon the same line of testimony as the payment of taxes. The abstracts referred to were abstracts that belonged to the land of Isaac Hoge, deceased. They had come into possession of appellants' father by virtue of his being executor. After his death, appellee was entitled to them. He called on Miss Sanford and she got them and personally delivered them to appellee. This is testified to by both appellee and Miss Sanford, and appellants' claim that they were employed and put in four days searching for these abstracts, is supported by their own testimony alone. These three items constitute appellants' entire counter claim. The instructions of the court have not been abstracted and no complaint is made in relation thereto. It is apparent that the whole controversy here is over questions of fact, depending largely upon the credibility of the witnesses. While it may be said that upon many of the material questions involved in these claims of appellants, there are three witnesses against two, and on some points three against one, still in determining the preponderance of testimony of the witnesses number is not the only thing to be considered. While the law imposes on this court the duty to review the evidence and to set aside verdicts that are so clearly and palpably against the weight of evidence as to lead to the belief that the jury acted from passion, prejudice or corrupt motives, still it is not the duty of this court to set aside every verdict simply because it is found against the testimony of the greater number of witnesses. We have read the evidence of the witnesses and we are constrained to say that we are very strongly impressed that appellee and Miss Ella Sanford delivered testimony of the most worthy and creditable character, and it is not a matter of surprise to us, under all the facts and circumstances of the case, that the jury believed them rather than the story told by appellants. In cases like the one at bar, where there is a contrariety of evidence

and the preponderance depends on the credibility of the witnesses, it is the province of the jury to determine such credibility and decide the issue accordingly. Green v. Mumper, 138 Ill. 434; Morgan v. Ryerson, 20 Ill. 343. In Green v. Mumper, *supra*, it is said: "The question submitted to the jury was purely one of fact, for their determination, and although we might be inclined to take a different view of the evidence from that entertained by the jury, yet where they have fairly arrived at a verdict, in the absence of error of law, without passion or prejudice, the verdict must stand."

It is insisted that the court erred in admitting proof of the employment of Miss Sanford, and what she did under the employment. There is no force in this position. This evidence was clearly competent to show who in fact did the work for which appellants claim compensation. To rebut any inference that Miss Sanford was simply assisting her brothers in the office, it was competent to show that she was acting under her employment by appellee.

It is finally alleged that the court erred in sustaining appellee's objection to interrogatory four in the depositions of a number of witnesses who were examined as experts on value of the services of appellants in securing a tenant for the Iroquois farm. The interrogatory is as follows: "Suppose that the plaintiff has charge of some 2,600 acres of land in Iroquois County, Illinois; that the same was not rented for the season of 1900, at a time long after realty leases are usually made, with every prospect of the land remaining unrented; that the defendants for the plaintiff, at his request, bestirred themselves, and by correspondence, advertising and otherwise, finally secured a good tenant for said season at a cash rental of $1,200, payable November 15, 1900, with six per cent. interest after maturity and ten per cent. attorney's fees in case of confession of judgment on the note taken should be entered up; that the necessary papers were carefully prepared by one of defendants, who is an attorney at law; and that the tenant thus secured for the plaintiff would undoubtedly have been persuaded to have leased

other lands in the vicinity which defendants owned or controlled to their own pecuniary advantage, what in your opinion, is the usual, fair and reasonable compensation for said services so rendered ?"

There is one substantial defect in this hypothetical question; the language in question, "And that the tenant secured for the plaintiff would undoubtedly have been persuaded to have leased other lands in the vicinity which defendants owned or controlled to their pecuniary advantage," is not based upon any evidence in the record; and if it were, appellants' claim is based on the value of services in procuring a tenant for appellee, not damage sustained by reason of losing a prospective tenant for other lands. Even if the supposed loss to appellants in this regard was included in the counter claim, it would be very difficult to determine, since we have no means of ascertaining the persuasive powers of appellants nor the susceptibility of Mr. Francour to such occult influences. Even if the question had been properly framed the refusal of the court to allow it to be answered is harmless error, since there is abundant proof in the record, outside of expert opinions, showing the value of the services. Chicago & Alton R. R. Co. v. Esten, 178 Ill. 192; City of Joliet v. Johnson, 177 Ill. 178.

The jury seems to have found against appellants on the theory that no services were rendered whatever; therefore the value of such alleged services becomes unimportant.

Finding no error in the record the judgment is affirmed.

*Affirmed.*